What we'll now take up the next case, Founders Insurance Company v. Goretzke, 516-0055. Counsel for the appellant. You may proceed. Don't forget to state your name for the record. May it please the court, counsel. I am Sheri Shalmadine. I am counsel for the plaintiff appellant, Founders Insurance Company. Your Honors, this matter comes before you following entry of a default judgment against one of Founders Insurance prior to Founders becoming aware that a lawsuit had been filed against this insurer. One need only look at the chronology of events here to understand the inequity that happened in this case and the very real error committed by the trial court in granting summary judgment in favor of the defendant who is the appellee in this case. The facts are as follows. On April 7, 2006, Kelly Goretzke and Anthony Ashbrook were involved in an accident. Founders received an attorney's lien letter from counsel for Anthony Ashbrook about October 10, 2006, so within six months of the accident. Founders responded to that letter from counsel saying, we have received notice of your lien. Please submit your items of special damages to us. Founders heard nothing in response to their letter to counsel. On February 25, 2008, Anthony Ashbrook threw counsel, the same counsel that wrote to Founders and the same counsel that Founders wrote back to file a lawsuit for personal injury. Kelly Goretzke, Founders insured, was served with that lawsuit on March 31, 2008. Two months later, in fact, just shy of two months later, Kelly Goretzke was defaulted and a default judgment was entered against her. That judgment was entered on May 26, 2008 for, I believe the amount is of record, $35,000 plus $226 in costs, which amount, incidentally, exceeds the Founders' policy limit, which was at the time $20,000 per person, $40,000 per occurrence. On January 15, 2009, about nine months later, if my math is correct, Founders received a letter from counsel for Anthony Ashbrook advising of the default judgment that had been rendered against Kelly Goretzke on May 26, 2008 and demanding payment in connection with that judgment. The letter is a record, and unequivocally, plaintiff's counsel, Anthony Ashbrook's counsel regarded that May 6, 2008 order as a final judgment. One need only look at the language in their letter to come to this conclusion. They obtained, in fact, the specific words used by Rhonda Fiss' office, counsel for the appellee, are, Our client, Anthony Ashbrook, obtained a judgment against your insured Kelly Goretzke on May 6, 2008 in the amount of $35,226. Please forward a check or payment of same, made payable to, and they give the names of the payees. Failure to do so will result in our taking more aggressive collection actions. A copy of the judgment is enclosed for your reference. On January 22, 2009, about one week later, Founders mailed a letter to counsel for Anthony Ashbrook advising that that was the first notice Founders had that the lawsuit had been filed and that a judgment had been entered against its insured without Founders knowing a thing about the fact that this lawsuit was filed and pending for less than two months in St. Clair County. Founders also wrote a letter to its insured saying, Hey, we've now learned of this lawsuit filed against you and this judgment entered against you. If you vacate the default judgment entered against you, we'll retain counsel to come in and defend you. Kelly Goretzke did not do that. Instead, on February 13, 2009, she signed an assignment assigning her rights to Anthony Ashbrook in exchange for which Anthony Ashbrook agreed not to pursue her personally for this judgment. Now I ask the court, how can you assign your rights to someone else unless there's a judgment? Certainly if the case were still pending, which Anthony Ashbrook's counsel is asking this court to decide in affirming the trial court. If this case were in fact still pending and Kelly Goretzke was still a defendant with no judgment entered at all, what was this assignment about? The assignment would have been completely perfunctory. She assigned her rights to Anthony Ashbrook in connection with that judgment that was entered against her in May of 2008. What about the plaintiff's argument that they had actual notice based upon the lien letter? Your Honor, the case law is very clear. Rice v. Arrowstar that notice of an attorney's lien is not sufficient to constitute notice of an actual lawsuit. Rice v. Arrowstar, which I've cited in my brief, is at 294-113-801. It's a Fourth District case decided in 1998. The court went on to say that the insurer does not bear the burden of discovering whether a lawsuit has been filed. Speaking of the attorney's lien letter that Mr. Ashbrook's counsel sent to founders, founders responded, as I stated. Founders responded to that letter and said, we acknowledge receipt of your lien. Send us your client's special damages. Upon hearing nothing, founders believed that the case had gone away, which an insurer has every right to do. If you send a letter as an insurance company to the tort plaintiff's attorney saying send us your items of special damages and they don't respond, what other reasonable conclusion can an insurance company draw? And the case law is very clear that founders did not have a duty to pull up the court docket every seven days to see if a lawsuit had been filed. That duty is simply not imposed upon an insurance company under Illinois law. What happened in this case is that Kelly Goreski was served. She didn't tell founders that she was served. Two months later, less than two months later, she's defaulted and a default judgment is entered against her. Now the record is very clear that Counselor Anthony Ashbrook knew about founders. They sent a letter, a lien letter, to founders back in 2006. Did they send a copy of the complaint to founders? No. Did they send a copy of the proof of service upon founders insured to founders? No. Did they send notice that they were moving or anticipating moving for default against founders insured? No. It wasn't until January of the following year, so we have June, July, August, September, October, November, December, eight months later that Counselor Anthony Ashbrook finally sends a copy of the judgment order entered against founders insured to founders. This is simply not allowed under the founders policy. The founders policy clearly requires actual notice of the lawsuit prior to judgment being entered. Counselor Anthony Ashbrook is then asking this court to look at Supreme Court Rule 272. 272 says that if an order says that a written order is required by the attorneys following a ruling. The order entered on May 26, 2008 has some language in it to suggest that within 14 days Anthony Ashbrook was supposed to have filed something. But Supreme Court Rule 272 is taken completely out of context in this case. Supreme Court Rule 272 speaks to a situation where the trial court makes a ruling from the bench following a trial or a protracted hearing. The trial court makes a ruling from the bench with or without a court reporter. And then the attorneys leave and maybe consider or discuss what the trial court ruled and how they should word it in an order. I've seen it where the attorneys go back to their offices. They prepare an order consistent with what the trial court ruled. They email it or fax it back and forth to each other to make sure that what I understood the trial court said is the same thing you understood the trial court said. And then they submit a written order to the court. And the reason for Supreme Court Rule 272 is to provide a date for finality of litigation for appeal purposes. It's not to provide some basis for an attorney who hasn't given notice of a lawsuit to an insurance company to say wait, this judgment is final. I still have to do X, Y, and Z before it's final. Well, Fowler submits to the court that this is a disingenuous argument at best. And Counsel for Anthony Ashbrook is playing fast and loose with rules here. When Supreme Court Rule 272 was not written or anticipated to apply to the facts in this case. And, in fact, the order entered on February 17, 2009, was done so after the trial court lost jurisdiction of the case. The trial court has 30 days to enforce the terms of a judgment order. They go in nine months later without notice. They give notice that very day and only to Goretsky to enter this second order. The second order mirrors the first order. So what was needed to be worked out? What was needed to be done in a second order? And we submit to the court that the second order only came about because founders denied coverage. If founders had taken Anthony Ashbrook's counsel's letter in January of 2009 and sent a check to them, here you go. Here's the check for the judgment that you entered in May of 2008. They never would have entered another order ever in this case. They only did that because founders denied coverage based upon lack of notice of the lawsuit before the judgment was entered. And so the trial court in this case said that founders didn't meet its burden of proof that it didn't have notice of the lawsuit before judgment was entered. We submit that this was error. This was a grant of summary judgment in favor of Anthony Ashbrook. So the review here is de novo. It's clear from this record that founders had no notice of this lawsuit at any time before judgment was entered in the case. The judgment was entered in this case on May 26, 2008. A second perfunctory unnecessary order was entered in February of 2009 by a court that lacked jurisdiction, was without notice, and was completely perfunctory. And is it true that appellants filed a cross motion for summary judgment? I believe that there were cross motions. What relief are you asking this court? What founders is asking this court to do is to find that the trial court erred in finding that founders had no notice of this judgment before – or notice of the lawsuit before judgment was entered and to grant summary judgment in favor of founders and in doing so, hold that founders has no duty to indemnify Kelly Goretsky for the judgment entered against her in May of 2008. That's the relief that founders is seeking. Yeah. Founders filed its declaratory judgment action in April of 2009, specifically setting forth the breach that had occurred, not only in the notice provision of the founders policy, which, as we state in our briefs and is clear from the record, requires that in the event judgment is entered before founders has actual notice of the lawsuit, founders has no duty to pay this judgment. The policy clearly says that. The trial court also held, erroneously, that Kelly Goretsky did not breach the cooperation provision of the policy. And the record on this is clear, Your Honor. She certainly did breach the cooperation provision. And for this further reason, we are asking the court to find that founders has no duty to indemnify her for this judgment. She's served with the suit. She doesn't tell founders. And after judgment is entered against her, she still doesn't tell founders about the lawsuit, about the fact that a judgment is entered against her. She assigns her rights to Anthony Ashdor. In doing so, she's washing her hands of the situation. I'm done. Here. This is all you. You go after founders as you see fit. I'm done. I'm going to get on with my life. This is what Kelly Goretsky did. Unfortunately, the founders policy requires that she do a whole lot more. The founders policy requires that if she is served with legal papers, which she was, that she immediately, the word immediately is used in the policy. Immediately forward those to founders. She did no such thing. She sat quiet and didn't tell founders about the lawsuit, didn't tell them about the default motion that was filed against her, the default order entered against her, or the judgment. Nothing. And she didn't do anything to vacate the default judgment that had been entered against her. On the contrary, she says, hey, that judgment's fine, and I'm going to assign my rights to collect that judgment to you, Anthony Ashdor. And this is severe. This resulted in severe prejudice to founders. So for the trial court to find that Kelly Goretsky did not breach the founders policy, we submit to the court that this was a manifest abuse of discretion, even though that's not the standard overview. But I believe that the record supports that finding. We simply cannot allow litigants in cases, Your Honor, to play fast and loose with the rules when following the rules doesn't benefit them. The rules are in place for a reason. Policy language, policy contracts, insurance contracts are there for a reason. If we allow parties to disregard this provision and that provision, then they have no merit. They have no teeth. And in order for the trial court's ruling to be upheld, this court would have to respectfully find that the founders policy has no teeth, that it's meaningless. And I'm confident that Your Honors will not do that and find that because founders had no notice of this lawsuit before judgment was entered, that founders is entitled to judgment as a matter of law. Thank you. Thank you, Counselor. We'll have an opportunity for rebuttal. Counsel for the appellee. Good morning. May it please the Court, my name is Rhonda Fiss and I represent the appellee. I would like to, first of all, clean up some of the gaps in the factual presentation that was just given. First of all, whenever notice was sent by Mr. Ashbrook's counsel in 2006 to Founders Insurance, the insurance company wrote back immediately and stated, We have received notice of your attorney's lien. Once our investigation is complete and the above requested documentation is received, we will evaluate your client's claim accordingly. It unequivocally indicated to Counsel for Mr. Ashbrook that it was going to conduct an investigation. This was a traffic accident. By its very nature, any investigation would require consultation with its insured, the driver at the time of the accident. So, at that point in time, per its own letter identifying its further actions, Founders conceded that it knew it had to get with its insured and investigate. Now, it's interesting, and I'm bringing this up a little out of order, but it's interesting to note that although, as a secondary defense, Founders wants to bring up that there was a lack of cooperation by its insured, number one, it's inconceivable how that could occur if, in fact, as promised, Founders had enlisted its insured to investigate this accident. But number two, the most important part of this is the lack of cooperation defense was thrown in at the very end because Founders knew it couldn't win on a lack of actual notice. If you'll look in the record, Founders did not bring up lack of cooperation until after it denied coverage under actual notice, filed its declaration complaint for declaratory judgment, didn't bring up lack of cooperation. It wasn't brought up at all until it filed a motion for summary judgment. So Council for Asheville wasn't even put on notice that this was something they were complaining until the day of the argument when it was argued by Founders Council that lack of cooperation should allow them to avoid coverage in this case. So I can represent to you unequivocally that that was never a defense where it was waived because of its belated time in being brought forward. But as to the real issue in this case, as to whether Founders had actual notice of this lawsuit in time to locate and defend, because this court, as well as every court in Illinois, has adopted that as the definition of actual notice. And without a doubt, Founders had actual notice and could locate and defend this case in time to protect its insured, and that's what it's all about. By Council for Founders' own admission, the type of policies that Founders sells to its insured are high risk, high premium to people who are often less sophisticated than other members of the general public. And as noted in several of the cases, because this is a mandatory situation where people in the state of Illinois are required to procure insurance, the protection of the general public, it is important to consider, you know, what is going on here in terms of the sophistication and the knowledge of the insured with respect to how to give notice to his or her insurance company. In this particular case, and it's well settled law in Illinois, that the victim of an accident by an insured such as Kelly Goreski has every right to step into her shoes and give notice and invoke coverage, invoke the duty to defend Kelly Goreski, and that's what happened here. Council for Founders would like to make light of the fact that there was an initial order in her of default that was provided to Founders, but she wants to ignore the language in that order and pretend that it was a final order that set in stone the judgment for $35,000. That is in fact not true. She never read you the language in that order, which is crucial in this particular case. I quote, in the order of May 6th upon which she relies for the position that Founders did not get actual notice of this lawsuit prior to judgment, Judge Lovenoff in the St. Clair County Circuit Court wrote these words, Attorney for Plaintiff shall submit judgment order within 14 days. There was a second act ordered by Judge Lovenoff on May 6th, 2008, that had to be fulfilled before this became a final and appealable order and one that would sustain scrutiny if Mr. Ashford tried to collect under this order. What about this letter that was written January 12th, 2009 from Mr. Garavaglia of your office saying, and I quote, our client Anthony Ashford obtained a judgment against your insured Kelly Goreski on May 6th, 2008 in the amount of $35,226. That doesn't sound like there's any future action under Rule 272 that needs to be taken. Well, Your Honor, that may have been Mr. Garavaglia's interpretation, but I can assure you attorneys consistently send letters encouraging payment and trying to get results for their client. That doesn't mean that there was a legal right to proceed to collect on the judgment. And in fact, under Rule 272, specifically the Supreme Court says that if at the time of announcing final judgment the judge requires submission of a form of written judgment to be signed by the judge, there's no final judgment until that occurs. Is Mr. Garavaglia an attorney in your office? He absolutely is. He absolutely is. And I can tell you, you know, it's similar to, I suppose, founders promising they're going to conduct an investigation, which they never did in this case. The bottom line here is, Judge, whenever that first order was entered on May 6th, 2008, it was sent immediately to founders. Founders had actual notice. Under the definition agreed to by this court, it could locate and defend. Well, the first notice that I can see is this letter that I just referred to, January 12th. You said immediately sometime between May 6th, 2008 and January 12th, 2009. Is there another letter? No, there isn't. You're right, Your Honor. But there was no more action taken. After that order was entered, the counsel for ASRA sent that letter waiting, hoping that we'd get some response from founders. Nobody wants to be in this position. We wanted founders to come in and defend the lawsuit. So we sent that letter, and founders, by its own admission, it told its own client in a letter when it got our letter, hey, go do this yourself. Go set aside the default order. And then after you've done that, come back to us and we'll defend you. That is a letter dated January 22nd to Kelly Goreski that founders sent after we sent the notice that we had taken the default judgment. Founders told her, we have received notice of the lawsuit which has been filed against you. There has been a judgment entered against you. Once the judgment has been vacated, we will assign counsel to assume the defense of this lawsuit. Founders knew, admitted by this letter of January 22nd, 2009, that the default order was out there to be set aside. Because there was no final order entered until the legalist, February, yes, February 17th. My office went back in, heard Judge Loveno's instructions, asked for leave to enter a final order in standard, and was given leave. Now, at that point in time, there was a judgment that could be acted upon. But founders already had notice of it. And the glaring thing here is founders, although it told its insurer to go out and set aside the default, it took no action whatsoever. No action whatsoever other than tell her to go set it aside. It abandoned its insurer. And then within two months after it received the final order of February 17th, 2009, did it intend to set that aside? No. What did it do? It ran and filed a complaint for declaratory judgment claiming that there could be no coverage for Miss Goreski because it hadn't received actual notice of the lawsuit, which by its own admission it had, and it chose not to act upon it. So, Your Honors, in this particular case, not only pursuant to the language in 272, but on the heavy facts as they exist, there was by the court's own order, no final order, that prejudiced founders whatsoever on May 6th, 2008. They were given ample time between the time it was sent to them and the final order was entered to do something about it, but they chose instead to take the path that would allow them to attempt to deny coverage. And they did so by punting off any action to set aside the initial default so that the time would run, the final order would be entered, and they could claim that there was no coverage because there was a failure to notify them when actually they were noticed in time to act. There was no prejudice to them whatsoever. The statement that had they shown up with a check, we wouldn't be standing here, well, of course we wouldn't be. And the assignment, that was pointed out several times, the assignment by Kelly Goreski occurred when that second order was entered because at that point she had already been told by founders, hey, go defend yourself, go vacate that default order yourself, and then we'll step in. That was the letter of January 22nd, 2009 that caused Kelly Goreski to assign her rights. At that point in time, she realized that founders had abandoned her, and even though it knew of the lawsuit, it just chose not to do anything on her behalf. So, I suggest to you, number one, that the summary judgment entered by the trial court was absolutely on point and correct. Founders produced, founders came forth with no evidence, no evidence other than what we have argued today to show that it in any way attempted to communicate with its insured, even though it advised our office that that was its intention when we notified them that we were making a claim and going to reprocess in this case. So, they did not fulfill, they didn't do anything. They didn't fulfill their duty to their insured throughout this process. The motion for summary judgment, the order for summary judgment should be affirmed, because if it is not, what it does is give insurance companies such as founders a green light to avoid, to have actual notice of a lawsuit, but then not act upon it. As founders did here, and then throw that responsibility after judgment is entered to its own insured on the pretense that once you handle it, we'll step in and do what we took your money to do in the first place. So, you know, that's an untenable situation that cannot be allowed. Thank you. Thank you, counsel. Rebuttal? I'll begin my rebuttal. May it please the court. I will begin my rebuttal with counsel's reference to green light. What this court's affirmation of the trial court order would do is give a green light to plaintiff's counsels to move for default judgment against the insured before the insurance company has an opportunity to come in and defend the insured. And essentially, get judgments against unrepresented people without the insurance company knowing a thing about the lawsuit. That is the green light that would be given to plaintiff's counsels should this honorable court affirm the trial court in this case. And for obvious reasons, that's a very dangerous green light that we certainly want to not go through. Counsel makes much of the fact, or not much, but she brought up the fact that founders, insurance companies, insurers are not sophisticated. This is not part of the record. This isn't part of the record. Insurance in Illinois is mandatory. There are all kinds of people living in the good state of Illinois. If everybody needs insurance, there are going to be people from every socioeconomic background imaginable. Certainly, Counsel for Anthony Ashbrook had no problem with the sophistication level of Kelly Goretsky. However, when she gave her a pen and asked her to sign an assignment of her rights to Anthony Ashbrook in this case, Kelly Goretsky was obviously determined by Counsel for Ashbrook to be competent enough and knowledgeable and smart enough to know what she was doing in that case. So, I'm asking this court to put aside this whole she's not sophisticated argument because it hasn't been properly documented by the record. And I misspoke. I gave the wrong date of the accident while I was talking. The judgment is May 6th. I've been saying May 26th, and I apologize for that. The letter sent by Founders to Counsel for Anthony Ashbrook in October of 2006 required or asked Counsel to submit to our office the items of special damages, including itemized bills, medical reports, hospital records, wage statements, photos, and estimates of property damage, and a legible copy of the police report. These are the things that Founders wanted to investigate. They wanted to see the police report. They wanted to see Anthony Ashbrook's items of special damages. And they said, give us your tax ID in case this matter is subtle. So, Counsel for Anthony Ashbrook was part of this letter, but not the whole thing. What Founders wanted to investigate was the police report, the special damages, just as any insurance company would want to do. a copy of the default judgment order entered on May 6, 2008. Again, Counsel is trying to distract this court with the language on the May 6, 2008 order requiring plaintiff to submit an order after this for whatever reason. That order required the plaintiff, in that case Anthony Ashbrook, to do something within 14 days. If we're going to look at that language, let's look at the whole thing. Let's look at what the court actually said. The court said within 14 days, Counsel for the Plaintiff Anthony Ashbrook shall submit a judgment order. Although I wasn't present, and I'm not certain why that language was included in that order. But the fact of the matter is nothing was done within 14 days. Nothing was done for nine months. And nothing significantly was done until after Founders denied coverage for lack of notice of the lawsuit prior to judgment being entered. Counsel also misspoke when she said that the assignment came after the final judgment, the final judgment, what she's calling the final judgment. Thank you, Counsel. Thank you, Your Honor. We will take the matter under advisement and issue a decision in due course.